# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### COURT FILE NO.: CV - _____

| | |
|---|---|
| Tammie Edwards and Keith Edwards, <br><br> Plaintiffs, <br><br> v. <br><br> Financial Asset Management Systems, Inc., John Doe, Blaine Bellinger, Latisha Moore, Ms. Evans, James Black, and James Norris, <br><br><br> Defendants. | **COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and out of the invasions of Plaintiffs' personal privacy by these Defendants in their illegal efforts to collect a consumer debt.

3. Venue is proper in this District because the acts and transactions occurred here, Plaintiffs reside here, and Defendants transact business here.

## PARTIES

4.    Plaintiff Tammie Edwards ("Tammie") is a natural person who resides in the City of St. Louis Park, County of Hennepin, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5.    Plaintiff Keith Edwards ("Keith") is a natural person who resides in the City of Zimmerman, County of Sherburne, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

6.    Defendant Financial Asset Management Systems, Inc. (hereinafter "Defendant FAMS") is a foreign corporation and a collection agency operating from an address of 2859 Paces Ferry Road Suite 510, Atlanta, GA 30339 and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

7.    Defendant John Doe (hereinafter "Defendant Doe") is a natural person employed by Defendant FAMS as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

8.    Defendant Blaine Bellinger (hereinafter "Defendant Bellinger") is a natural person employed by Defendant FAMS as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

9.    Defendant Latisha Moore (hereinafter "Defendant Moore") is a natural person employed by Defendant FAMS as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

10.   Defendant Ms. Evans (hereinafter "Defendant Evans") is a natural person employed by Defendant FAMS as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

11.   Defendant James Black (hereinafter "Defendant Black") is a natural person employed by Defendant FAMS as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

12.   Defendant James Norris (hereinafter "Defendant Norris") is a natural person employed by Defendant FAMS as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

13.   On or around 1996, Plaintiff Keith Edwards incurred a financial obligation that was primarily for personal, family or household purposes, that went into default for late payment, and was therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a Fidelity Visa Charge Card with a credit limit of $3,000, which was used by Keith to make personal purchases of food, clothing, and shelter-related items, and is now alleged to be in the amount of $7,767.

14.   Sometime in or before February 2007, this alleged debt was consigned, placed or otherwise transferred to Defendants for collection from Tammie,

when thereafter Tammie started receiving collection communications from Defendants in an attempt to collect this debt.

### *February 26, 2007 Call with Defendant John Doe*

15.  On or about February 26, 2007, Defendant Doe contacted Tammie by telephone in an effort to collect this debt.

16.  Defendant Doe asked Tammie if she had any plans to pay back the $7,767 alleged debt.

17.  Tammie told him he had the wrong person.

18.  Defendant Doe then verified Tammie's social security number and name.

19.  Tammie confirmed the information but explained that she did not have any credit cards with that amount.

20.  Defendant Doe then continued to insist that this account belonged to Tammie.

21.  Defendant Doe then asked if Tammie actually thought someone else would open an account with her social security number, and name and insisted that she had this account.

22.  Defendant Doe then offered Tammie a deal to pay $5,400 instead of the full amount he claimed was owed, namely, $7,767.

23.  Tammie again denied that this account was hers and Defendant Doe replied that he could not believe that she would not take the offer.

24.   Defendant Doe persisted and demanded to know why Tammie would not rather pay the $5,400, as opposed to the full amount of $7,767.

25.   Tammie again asked why she should pay this amount when it was not her account.

26.   At this point, Tammie was very upset by the tone, tenor, and insistence of Defendant Doe about this debt.

27.   Tammie asked if the credit card might possibly have been her ex-husband's debt.

28.   Defendant Doe falsely claimed the account was opened back in 1996 under Tammie's name only.

29.   Eventually, the call ended after Tammie repeatedly stated that this account did not belong to her and that she would not pay it.

30.   Defendant Doe was very argumentative, accusatorial, and verbally disrespectful to Tammie throughout this call.

31.   This call from Defendant Doe to Plaintiff Tammie Edwards was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c(a)(1), 1692d, 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(10), and 1692f, amongst others.

### Responsibility for the Alleged Debt

32.     After this conversation with Defendant Doe, Tammie called Keith and asked him if he knew anything about this debt.

33.     Tammie learned that this debt might be a credit card account that Keith had opened in 1996 and that he had filed bankruptcy on this account in January 2007, in the United States Bankruptcy Court Minnesota District.

34.     Keith later determined that the account had been opened in his name only.

### Phone Calls to Defendant Latisha Moore on February 27, 2007

35.     The following day, Keith called Defendant FAMS and talked to Defendant Latisha Moore.

36.     Keith was attempting to assist his ex-wife in working out this account that had been previously included in a bankruptcy filing.

37.     Keith explained to Defendant Moore that this bill was not his ex-wife's responsibility and that her name should not even be on the account, since she was not a primary cardholder and he believed that Tammie had never agreed to repay this account.

38.     Defendant Moore said she fully understood what Keith was saying but did not have permission to talk to him about Tammie's account.

***Call Later that Day***

39.   Later that day, both Tammie and Keith called Defendants back about this alleged debt while on her break from her cell phone, and spoke to Defendant Moore in order to relay Tammie's permission for Keith to speak with Moore about this account.

40.   Defendant Moore did not want to discuss anything but the debt and immediately asked Tammie when she was going to pay this bill.

41.   Tammie tried to explain to Defendant Moore that her only purpose was to give Moore permission to discuss this debt with Keith.

42.   Instead of speaking with Keith, Defendant Moore began to berate Tammie about this debt and demanded that she pay it.

43.   At some point in this abusive phone conversation, Defendant Moore handed off the collection call to a person later identified as Defendant Black who stated that he was an "Office Manager."

44.   Defendant Black immediately began yelling at Tammie, loud enough so that Keith could hear Defendant Black clearly from Tammie's cell phone that was a few feet away.

45.   After Tammie told Defendant Black that Keith had filed bankruptcy on this account, Defendant Black told Tammie that her ex-husband had committed fraud on this account.

46.   Defendant Black also told Tammie that her ex-husband, Keith, had "taken the easy way out" and that she ought to sue Keith in small claims court for the balance of the card debt.

47.   Defendant Black then began rattling off information on Tammie's credit report, saying that she otherwise had great credit and that this was the only one that she was behind on.

48.   After explaining that she had talked about this account with her ex-husband, Defendant Black told Tammie, "You are stupid for still talking to Keith--he is the one that got you into this situation.  He probably can't get credit on his own so he used your name, you should sue him for fraud!"

49.   Tammie then tried to tell Defendant Black that the account was Keith's account and she was just an authorized user, but Defendant Black would not hear any of it.

50.   Defendant Black just kept yelling at Tammie and telling her to pay the bill.

51.   Defendant Black started in again on Tammie telling her that she should get the money from Keith because he had lots of money given that he had recently filed bankruptcy.

52.   Tammie placed Defendant Black's conversation on the speakerphone and Keith overheard him ranting.

53.    Keith then spoke up and told Defendant Black to watch what he was saying because he was on speakerphone.

54.    Defendant Black then demanded to know whom he was speaking, and Keith responded by telling Black that it was the person about whom he was making derogatory remarks.

55.    Defendant Black then retorted that the facts were that Tammie owed this debt and needed to pay the money.

56.    Keith then also tried to explain the facts to Defendant Black about the account being included in bankruptcy and Tammie not being a cardholder on the account.

57.    Defendant Black continued to yell at both Tammie and Keith and refused to listen to what they were saying.

58.    Keith then asked Defendant Black if he could listen to the facts and talk to Chase Manhattan to see whether they could get this straightened out.

59.    Keith repeated to Defendant Black that he had opened this account in 1996 through Fidelity National, but Defendant Black argued about this fact as well and said that the alleged debt was listed as a Chase Manhattan account only in Tammie's name.

60.   Defendant Black then started yelling again and said that it did not matter what they said, but that this account was on Tammie's credit report, she was liable for it, and she needed to pay it.

61.   Sometime thereafter the conversation ended.

62.   This call with Defendant Moore and Defendant Black to Plaintiffs on this occasion was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c(a)(1), 1692d, 1692d(5), 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(10), and 1692f, amongst others.

### *Call from Defendant Miss Evans on April 26, 2007*

63.   On April 26, 2007 at 6:00 p.m., Tammie received a call from a Defendant Evans.

64.   Defendant Evans identified herself to Tammie and told her that she was calling for Chase MasterCard and was collecting a debt for approximately $7700.

65.   Defendant Evans stated that Tammie was the primary cardholder on this account and that there were no co-signers on it.

66.   Defendant Evans then told Tammie that "this is it" and that this was the "last straw" and that Chase Bank was going to take "further action" with the Tammie if she did not pay this debt.

67.   Tammie took "further action" to mean that she would be sued for this debt.

68.   Despite such a threat, neither these Defendants nor the original creditor has taken any such action.

69.   Tammie explained that she did not owe this debt and did not feel she had to pay it.

70.   Defendant Evans stated that Tammie was going to pay this debt one way or the other.

71.   Tammie believed that she did not owe this debt because this debt was her ex-husband's debt on which upon he had filed bankruptcy.

72.   Defendant Evans then told Tammie that she did not care and that Tammie was responsible for this debt anyway.

73.   Defendant Evans then demanded to know to whom Tammie had given her credit card.

74.   Defendant Evans then told Tammie that she was the responsible one regardless, but Tammie tried to explain that she had disputed this debt.

75.   Defendant Evans then stated that Tammie's "disputing days" were over and that everything on this account matched Tammie.

76.   Defendant Evans then stated that she was looking at Tammie's credit report and did not understand why Tammie was not paying on this account.

77.   Tammie explained that she had never made a payment on this account and never received any account statement for this account.

78.    Defendant Evans then challenged Tammie and stated that Tammie had in fact received all of these account statements and that they could "trace" that all of these bills had been sent to Tammie.

79.    Defendant Evans also said that Defendants could "trace" all of the payments back on this account back to 2006.

80.    Tammie was very upset throughout this call and was unable to interject anything because Defendant Evans was dominating the conversation.

81.    Defendant Evans then ominously told Tammie that she would conduct and "asset investigation" of her.

82.    Defendant Evans then stated that she would do an "employment verification" of Tammie "and in so many words, you know what happens after that."

83.    Defendant Evans gave her name and number to the Tammie and told her that she had until that evening to get with whomever she had "given her card to" and make an action plan on how to pay this debt.

84.    Tammie explained that she was still disputing this debt and that she would not pay it.

85.    Defendant Evans then stated, "There's no way to dispute, Hon!!!" and then hung up.

86.    Defendant Evans was rude, aggressive, and belligerent throughout this call.

87.     This call with Defendant Evans to Plaintiff Tammie Edwards on this occasion
        was a collection communication in violation of numerous and multiple
        provisions of the FDCPA, including but not limited to 15 U.S.C. §§
        1692c(a)(1), 1692d, 1692d(5), 1692e, 1692e(2), 1692e(5), 1692e(7),
        1692e(10), and 1692f, amongst others.

### *March 30, 2007 Call from Defendant Latisha Moore*

88.     On or about March 30, 2007, Tammie called Defendants back to speak with
        Defendant Bellinger, 1-800-530-3908 and asked for ext. 2321.

89.     Defendant Bellinger was gone for the day but Defendant Moore offered to
        help Tammie.

90.     Tammie explained that she was trying to contact a lawyer to try to figure out
        what she could do about his alleged debt, which Defendants were trying to
        collect from her.

91.     Tammie explained that this was a courtesy call to let Defendants know that
        she was working on things on her end and was waiting for a lawyer to call
        her back to explain her rights to her.

92.     Defendant Moore then falsely told Tammie that it was a waste of time
        talking to a lawyer and that she hoped Tammie was not paying a lawyer who
        would just tell her to pay the debt anyway.

93.     Defendant Moore falsely told Tammie that her only options with respect to this alleged debt were to file bankruptcy herself or pay the debt.

94.     Defendant Moore asked when Tammie was going to hear back from the lawyer and Tammie said she did not know, but that she hoped soon.

95.     This call between Defendant Moore and Plaintiff Tammie Edwards on this occasion was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), and 1692f, amongst others.

### *June 14, 2007 Call From Defendant James Norris*

96.     On or about June 14, 2007, at approximately 10:01 a.m. Arizona time, Tammie received a phone call from Defendant Norris while on vacation.

97.     Defendant Norris demanded to know whether or not she was going to pay this alleged debt.

98.     Tammie again explained that this debt was not hers, that Defendant Norris was now calling her cell phone, and that she was on vacation.

99.     Defendant Norris responded by remarking that he wished he could go on vacation, too, but that he had to work instead.

100.    Defendant Norris asked Tammie what she planned to do about this debt, and Tammie responded by saying that she was going to do nothing because it was not her debt.

101.    Defendant Norris responded by rudely saying "What do you mean nothing?! You paid on this debt for 10 years!"

102.    Tammie denied that she had ever paid on the debt, but Defendant Norris responded that someone had been paying on it.

103.    Tammie then told Defendant Norris that it was her ex-husband, Keith, whom had paid on this debt, because it was his debt.

104.    Defendant Norris said that Tammie could not blame her ex-husband for this debt, because it was her responsibility and Keith's name was not on the debt.

105.    Defendant Norris went on to say that Tammie could be as mad as she wanted at Keith and collect the debt from him after she paid it, but that Tammie owed the bank over $7,000.

106.    Tammie then reiterated that she did not want to further discuss this matter as she was on vacation.

107.    Defendant Norris told Tammie that he did not care if she was on vacation and that he could not put down "on vacation" as an excuse to not paying.

108.    Tammie then told Defendant Norris that she was going to hang up so that she could enjoy her vacation.

109.    Defendant Norris then told Tammie that her conduct was going to go down as a "refusal to pay" and that it would "go against her."

110. This call between Defendant Norris and Plaintiff Tammie Edwards on this occasion was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c(a)(1), 1692d, 1692d(5), 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(8), 1692e(10), and 1692f, amongst others.

### Messages from Defendant Bellinger in March 2007 and June 2007

111. In or around March 30, 2007 and June 20, 2007, Defendant Bellinger left voicemail messages for Tammie on her home and cellular telephones.

112. During these messages, Defendant Bellinger claimed he was from the "auditing department" and that the call required Tammie's immediate attention.

113. These communications from Defendant Bellinger were collection communications in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(10), and 1692f, amongst others.

### Summary

114. The above-detailed conduct by these Defendants of harassing Plaintiffs in an effort to collect this debt was a violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the above mentioned

provisions of the FDCPA, as well as an invasion of Plaintiff's privacy by an intrusion upon seclusion and resulted in actual damages to these Plaintiffs.

115.   This series of abusive collection calls by these Defendants and its employees caused Plaintiff Tammie Edwards to at times cry uncontrollably and made her physically ill because of the emotionally abusive manner in which this debt was collected by these Defendants.

116.   Defendants' repeated attempts to collect this debt from Plaintiff Tammie Edwards, a person whom did not owe this debt, was an invasion of Plaintiff's privacy and her right to be left alone.

117.   Defendants' illegal abusive collection communications as more fully described above were the direct and proximate cause of severe emotional distress on the part of both Plaintiffs and caused them unnecessary personal strain.

118.   Plaintiffs have suffered actual damages as a result of these illegal collection communications by these Defendants in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

### *Respondeat Superior Liability*

119.   The acts and omissions of these individual Defendants, and the other debt collectors employed as agents by Defendant FAMS who communicated with

Plaintiffs as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant FAMS.

120. The acts and omissions by these individual Defendants and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant FAMS in collecting consumer debts.

121. By committing these acts and omissions against Plaintiffs, these individual Defendants were motivated to benefit their principal, Defendant FAMS.

122. Defendant FAMS is therefore liable to Plaintiffs through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by these individual Defendants and its collection employees, including but not limited to violations of the FDCPA and Minnesota tort law, in their attempts to collect this debt from Plaintiffs.

## **TRIAL BY JURY**

123. Plaintiffs are entitled to and hereby respectfully demand a trial by jury on all issues so triable.  US Const. amend. 7.  Fed.R.Civ.P. 38.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et seq.

124.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

125.   The foregoing acts and omissions of each and every Defendant and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to each of these Plaintiffs.

126.   As a result of each and every Defendant's violations of the FDCPA, Plaintiffs are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from each and every Defendant herein.

## COUNT II.

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

127.   Plaintiffs incorporate by reference all of the paragraphs of this Complaint as though fully stated herein.

128. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

129. Defendants and/or their agents intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of these Plaintiffs, by repeatedly and unlawfully attempting to collect a debt and thereby invaded each Plaintiff's privacy.

130. Defendants and their agents intentionally and/or negligently caused emotional harm to each of these Plaintiffs' by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon each of these Plaintiff's rights to privacy.

131. Plaintiff Tammie Edwards had a heightened expectation of privacy in that she did not owe this debt.

132. Plaintiff Keith Edwards had a heightened expectation of privacy in that he did not owe this debt, as it had been discharged in a personal bankruptcy proceeding.

133.   Each Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

134.   The conduct of these Defendants and their agents, in engaging in the above-described illegal collection conduct against these Plaintiffs, resulted in multiple intrusions and invasions of privacy by these Defendants which occurred in a way that would be highly offensive to a reasonable person in that position.

135.   As a result of such intrusions and invasions of privacy, each Plaintiff is entitled to actual damages in an amount to be determined at trial from each and every Defendant.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiffs pray that judgment be entered against each and every Defendant:

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for each Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each and every Defendant and for each Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for each Plaintiff;

## COUNT II.

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

- for an award of actual damages from each and every Defendant for the emotional distress suffered as a result of the intentional and/or negligent FDCPA violations and intentional and/or negligent invasions of privacy in an amount to be determined at trial and for each Plaintiff; and

- for such other and further relief as may be just and proper.

Respectfully submitted,

Dated: October 22, 2007

**BARRY & SLADE, LLC**

By:  **s/Peter F. Barry**
Peter F. Barry, Esq.
Attorney I.D.#0266577
2021 East Hennepin Avenue, Suite 195
Minneapolis, Minnesota 55413-1773
Telephone:  (612) 379-8800
Facsimile: (612) 379-8810
pbarry@lawpoint.com

pfb/ra

**Attorney for Plaintiff**

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF MINNESOTA        )
                                    ) ss
COUNTY OF HENNEPIN       )

Plaintiff Tammie Edwards, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _Oct. 22, 2007_      _Tammie Edwards_
                                          Tammie Edwards

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF MINNESOTA              )
                                ) ss
COUNTY OF SHERBURNE             )

Plaintiff Keith Edwards, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __10/22/2007__          _Keith O. Edwards_
                                    Keith Edwards

-24-